UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**EMMETT GREGORY NOLAN,**    )
                             )
    **Plaintiff,**         )
                             )
**vs.**                      )  Civil Action Number
                             )     4:15-cv-00935-AKK
                             )
**CAROLYN W. COLVIN, Acting**)
**Commissioner, Social Security** )
**Administration***,*        )
                             )
    **Defendant.**

## MEMORANDUM OPINION

Emmett Gregory Nolan ("Nolan") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 205(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.    Procedural History

Nolan filed his application for Title II Disability Insurance Benefits on May 9, 2007, alleging an onset date of July 1, 2005 due to a herniated disc in his neck and bone spurs. (R. 81, 85, 559-60). After the SSA denied his application, Nolan

requested a hearing before an ALJ ("the initial hearing"). (R. 46, 49-50). Nolan had not engaged in substantial gainful activity since May 9, 2007. (R. 17). The ALJ found that Nolan suffered from the severe impairments of "cervical disc disease and carpal tunnel syndrome," (R. 17), but that he "d[id] not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," (R. 19). Moreover, the ALJ in the initial proceeding found that Nolan:

> has the residual functional capacity ["RFC"] to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours in an eight hour workday and sit 6 hours in an eight hour workday with frequent grasping, twisting, handling and fine manipulation and occasional pushing, pulling, stair climbing, bending, stooping, and reaching.

(R. 19). In light of Nolan's RFC, the ALJ determined that he "is unable to perform any past relevant work" but that "there are jobs that exist in significant numbers in the national economy that [Nolan] can perform." (R. 21-22). As such, the ALJ denied Nolan's claim on November 19, 2009, (R. 12, 22-23), which became the final decision of the Commissioner on March 11, 2011 when the Appeals Council refused to grant review, (R. 1-3).

Nolan then appealed the Commissioner's initial decision to this court, which remanded the case on the Commissioner's motion. (R. 450-52). In its November 1, 2011 order of remand, the district court instructed the ALJ to "(1) consider the impact of [Nolan's] obesity on his ability to perform work-related activities, and

(2) obtain vocational expert ["VE"] testimony to further consider whether there are jobs that exist in the significant numbers in the national economy that [Nolan] can perform given his age, education, work, experience, and [RFC]." (R. 450). In its March 30, 2012 order of remand, the Appeals Council found, inter alia, that the ALJ had misapplied the statutory definition of "light work;"[1] moreover, the Appeals Council instructed the ALJ on remand to: (1) "[e]valuate [Nolan's] obesity employing the [requisite criteria];" (2) "[g]ive further consideration to [Nolan's] maximum residual functional capacity and provide appropriate rationale[s] with specific references to evidence of record in support of the assessed limitations;" and (3) "[o]btain supplemental evidence from a [VE] to determine whether [Nolan] has acquired any skills that are transferrable." (R. 447-48).

At the time of Nolan's hearing on remand on October 25, 2013, he was 46 years old, had completed twelfth grade, and had past relevant work experience as a short-order cook, an all-around logger, and a construction worker (R. 81, 91, 417, 441). Nolan had still not engaged in substantial gainful activity since May 9, 2007. (R. 409).

---

[1] Specifically, the ALJ in finding that Nolan was capable of "light work" determined that he was capable of standing and walking for only four hours in an eight-hour day, which is less than the six hours in an eight-hour day required by the statutory definition of "light work." *See* (R. 447); 20 CFR § 416.967(b) (defining "light work").

The ALJ subsequently denied Nolan's claim on February 7, 2014, (R. 404-06, 417-18), which became the final decision of the Commissioner on April 8, 2015 when the Appeals Council refused to grant review, (R. 391-93). Nolan then filed this action pursuant to § 205(g) on June 3, 2015. Doc. 1.

## II.     Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.   Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the five-step analysis in the second proceeding, the ALJ found that Nolan had not engaged in substantial gainful activity since May 9, 2007 and therefore met Step One.[2] (R. 409). Next, the ALJ found that Nolan satisfied Step

---

[2] The ALJ did note, however, that Nolan's 2008 treatment records indicate that he had fallen at his brother's logging company *while at work*, (R. 409, 332-33, 339); however, at his hearing, Nolan denied working after his application for benefits, (R. 427-28). An affidavit from Nolan's brother similarly stated that Nolan had not worked for the logging company since May 9, 2007. (R. 409, 594). Additionally, at the hearing Nolan admitted to using weekly between $100 and $200 of illegal substances, which he asserted he financed either through his mother, friends, ex-wife, or theft. (R. 409, 430, 434). Although she noted that illegal activity may be considered substantial gainful activity, *see* Social Security Ruling 94-1c (1994), the ALJ found for the

Two because he suffered from the severe impairments of "obesity, spondylosis of the lumbar spine and degenerative changes of the cervical spine." (R. 409). The ALJ then proceeded to the next step and found that Nolan did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 411). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Nolan:

> has the [RFC] to perform light work as defined in 20 C.F.R. 416.967(b) except that on a function-by-function basis, [Nolan] cannot climb ladders, ropes or scaffolds. He can occasionally reach overhead and push and pull arm controls. He should avoid any exposure to excessive vibration, unprotected heights and hazardous machinery.

(R. 412). In light of Nolan's RFC, the ALJ determined that Nolan "is capable of performing past relevant work as a short order cook." (R. 417). Therefore, the ALJ found that Nolan "has not been under a disability, as defined in the Social Security Act, since May 9, 2007." *Id.*

V.   **Analysis**

Nolan asserts that the ALJ impermissibly erred by, first, not appropriately responding to the district court's and to the Appeals Council's instructions on

---

purposes of her decision that Nolan had not engaged in substantial gainful activity since May 9, 2007, (R. 409).

remand, and, second, reaching a decision that was not supported by substantial evidence. *See* doc. 10 at 7-13. Neither of these contentions, however, establishes reversible error.

    *1. The ALJ Complied with the District Court's and Appeals Council's Directions on Remand*

Nolan argues that the ALJ's findings here are not responsive to the instructions of the district court and the Appeals Council on remand. *See generally* doc. 10 at 7-9. Specifically, Nolan seems to argue that the ALJ erred on remand as a matter of law by excluding carpal tunnel syndrome from her finding of severe impairments and by finding a less inclusive RFC than the ALJ had found in the initial determination. *See id.* This argument fails for a number of reasons.

Notwithstanding the initial ALJ's decision, the second ALJ was entitled to revisit both the designation of Nolan's carpal tunnel as severe and Nolan's RFC. As a threshold matter, because the Appeals Council vacated the November 2009 opinion, the ALJ on remand could not defer to the initial ALJ's findings. *See* Hearings, Appeals, and Litigation Law (HALLEX) manual I-2-8-15 ("If the Appeals Council . . . remands a case to the hearing level after a court remand, it generally vacates the entire prior [ALJ] decision, and the ALJ must consider all pertinent issues *de novo*."). That said, "[w]hen specific instructions have been provided in a remand order, whether that remand order is issued by the Appeals

Council or the federal court, the ALJ *must* do as it instructs." *Russ v. Astrue*, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *6, (M.D. Fla. Mar. 20, 2009) (emphasis in original) (relying on *Warren-Ward v. Astrue*, No. 1:07-cv-811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10, 2008)). However, on remand the second ALJ is not otherwise bound by the first ALJ's decision, as "[t]he [ALJ] may take any additional action not inconsistent with the order of remand." *See Gibbs v. Barnhart*, 130 F. App'x 426, 430 (11th Cir. 2005) ("Social Security regulations provide that, in the event the Appeals Council [or the district court] orders a remand, the ALJ shall initiate such additional proceedings and take such other action . . . as directed by the Appeals Council [or the district court] in its order of remand.'") (internal quotations and citations omitted); *see also Russ*, 2009 WL 764516, at *6 (noting that "the regulations also allow the ALJ to consider issues not specifically contemplated in the remand order and to take action accordingly") (relying on 20 C.F.R. §§ 404.977(b), 404.983). Indeed, the ALJ "is encouraged to review 'the record on remand, check[] initial findings of fact and mak[e] corrections, if appropriate.'" *Russ*, 2009 WL 764516, at *6 (quoting *Miller v. Barnhart*, 175 F. App'x 952, 955-56 (10th Cir. 2006)). Therefore, the mere fact that the ALJ revisited the Commissioner's previous decision is not, without more, sufficient for reversal.

A review of the district court's and the Appeals Council's instructions on remand also indicate that the ALJ appropriately incorporated them into her analysis. *See id.* ("[A]n ALJ commits legal error by not following the mandate of the court.") (citations omitted). As to the exclusion of carpal tunnel as severe impairment on remand, the court observes that neither the district court nor the Appeals Council mandated that carpal tunnel remain a severe impairment. *See* (R. 447-48, 450-51). In fact, although both the district court and the Appeals Council mandated that the ALJ evaluate the impact of Nolan's *obesity* on his ability to perform work-related activities under the Commissioner's regulations, *see* (R. 447-48; 450-51), neither court made any specific findings regarding Nolan's purported impairments from carpal tunnel. As such, because the ALJ may "consider issues not specifically contemplated in the remand order and [may] take action accordingly," *Russ*, 2009 WL 764516, at *6, she did not err as a matter of law by reconsidering on remand whether Nolan still suffered from a severe impairment of carpal tunnel syndrome.[3]

As to the conclusion that Nolan was subject to a less restrictive RFC as compared to the Commissioner's initial decision, the court similarly finds that the courts' instructions do not conflict with the ALJ's findings on remand. Nolan

---

[3] Of course, the ALJ's determination that Nolan does not suffer a severe impairment due to carpal tunnel syndrome is only appropriate if it is supported by substantial evidence, an issue the court examines in detail in Section V.2.b below.

seems to argue that, because the Appeals Council found that the ALJ in the initial suit had misapplied the RFC limitations for "light work" under the Commissioner's guidelines, the ALJ on remand was therefore required to find an RFC that was at least as restrictive. *See* doc. 10 at 7-8. However, Nolan misunderstands the gravamen of the Appeal Council's remand regarding the initial ALJ's light work finding; in fact, the Appeals Council took issue with the initial ALJ's application of the Commissioner's definition of "light work" as it applied to that ALJ's findings of Nolan's standing and walking limitations. *See* (R. 447-48). The Appeals Council did *not* determine on remand that the original ALJ's RFC was therefore controlling; to the contrary, the Appeals Council directed the ALJ to "[g]ive further consideration to the claimant's maximum [RFC]." *See id.* This fact, combined with the fact that both courts directed the ALJ to incorporate Nolan's obesity into Nolan's RFC finding on remand, indicate that the ALJ's decision to adjust Nolan's RFC was similarly "not inconsistent with the [Appeals Council's] order of remand." Therefore, because the ALJ's reexamination of Nolan's RFC was not at odds with the courts' directions on remand, Nolan's argument that the ALJ erred as a matter of law cannot succeed.[4]

---

[4] As with the ALJ's decision regarding Nolan's carpal tunnel, the ALJ's RFC determination on remand is also only permissible if it is supported by substantial evidence, which the court examines in detail in Section V.2.b.

### 2. *The ALJ's Decision is Supported by Substantial Evidence*

Nolan also argues that the ALJ's decision is not supported by substantial evidence. Specifically, he argues that the ALJ erred by failing to give appropriate deference to the physical capacity opinion of Dr. Daniel Williams, Nolan's treating physician. *See* doc. 10 at 10-12; (R. 415-16). He also argues that the ALJ's RFC determination that Nolan was capable of light work is not supported by substantial evidence. *See id.* at 8-10. Neither of these arguments prevails.

### a. Dr. Williams's Physical Capacity Opinion

Relying on Eleventh Circuit law that an ALJ give "substantial or considerable weight" to the medical opinion of the claimant's treating physician unless "good cause" is shown,[5] *see Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004), Nolan argues that the ALJ erred by finding that Dr. Williams's physical capacity opinion was "entitled to little probative weight," *see* (R. 415-16). The ALJ found that Dr. Williams's opinion—which asserted that Nolan could lift only 20 pounds occasionally and 10 pounds frequently; was prohibited entirely from stooping; could only occasionally push, pull, climb, balance, bend, or reach;

---

[5] "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Moreover, "[w]hen electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [her] reasons." *Id.*

experienced pain that would be distracting to adequate performance of daily activities or work; and suffered drug side effects severe enough to limit Nolan's effectiveness at work, (R. 357-59)—was not entitled deference because neither objective testing, [6] the findings in Dr. Williams's records, nor findings elsewhere in the record supported Dr. Williams's conclusions. (R. 416). Although Nolan has failed to identify any specific evidence in the record to support his contention that the ALJ should have afforded Dr. Williams substantial weight, the court nonetheless has examined the record and determined that the ALJ's credibility determination here is supported by substantial evidence.

The evidence in the record does not support Dr. Williams's physical capacity opinions. First, the objective testing contradicts his findings. Indeed, with the exception of a cervical myelogram from 2005 finding "prominent" and "pronounced" defects in Nolan's neck, *see* (R. 178), and a 2008 finding of "chronic . . . wedge deformities" at the thoracolumbar junction, *see* (R. 336), the imaging taken of Nolan's back and spine reflects only "mild," "minimal," or "moderate" findings. *See* (R. 177-78, 202, 226, 251, 334-36 (reflecting "normal" findings on Nolan's cervical, thoracic, and lumbar spine and "[n]o definite acute . .

---

[6] Although the ALJ's opinion indicates that "[t]here is evidence that Dr. Williams performed or reviewed objective tests, perform drug screens, or found any significant abnormalities on examinations," (R. 416), the court, examining the sentence in context, agrees with Nolan, doc. 10 at 12, that the ALJ must have intended to find that there was *no* evidence that Dr. Williams had performed or reviewed objective tests.

. abnormality[ies]), 678). Second, Dr. Williams's treatment records do not substantiate such a serious limitation on Nolan's ability to perform work-related activities. Indeed, Dr. Williams's treatment notes do not reflect an examination of any objective medical imaging and reflect only "chronic pain" without any finding of serious abnormalities, *see* (R. 367-90),—specifically, his notes reflect abnormalities in the form of "spasm" in Nolan's physical examination records, (R. 378-79, 381, 384-86), and only one report of numbness in Nolan's left leg, (R. 374).[7] Notwithstanding these relatively minimal findings, however, Dr. Williams continued to prescribe Nolan pain medication.

Third, treatment records and objective tests from other physicians do not support Dr. Williams's opinion. Namely, Nolan's treatment records routinely reflect non-severe symptoms; for example, Nolan records variously reflect that he had normal range of motion, (R. 296, 617, 651, 667, 682); 5/5 grip strength, (R.

---

[7] In the absence of any additional objective evidence to support his opinion, then, Dr. Williams seems to be relying at least in part on Nolan's self-reported symptoms and allegations as to the severity of his pain—allegations that the ALJ has found not credible. *See* (R. 413); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 115, 1159 (affirming the ALJ's decision to grant discounted weight to a treating physician when the physician's opinion was contradictory to his treatment notes and "based primarily on [the claimant's] subjective complaints of pain"); *Powell v. Comm'r of Soc. Sec.*, 571 F. App'x 914, 917 (11th Cir. 2014) ("Although we do not require an explicit finding as to credibility . . . the implication must be obvious to the reviewing court.") (alteration in original) (internal quotations and citation omitted). Nolan has not challenged this credibility determination on appeal. *See generally* doc. 10.

296); no tenderness or, at most, mild or moderate tenderness,[8] (R. 296, 333 (finding a "non-tender" neck and only mild back pain), 617, 667 (finding no neck pain), 682, 710 (no tenderness or spasm of the back)); and a normal gait, (R. 296). The record does not reflect any complaints of unwanted side effects from pain medication. Moreover, to the extent that Nolan argues that Dr. Williams's opinion is supported by Nolan's efforts to access pain medication, *see, e.g.*, (R. 219-25, 310, 312, 316, 317, 320-24, 327, 351-53, 367-79, 390, 666, 696), the court finds this argument unpersuasive in light of: Nolan's history of illegal drug use, (R. 327, 681 (reporting methamphetamine and cocaine use combined with Lortab), 692); one of his doctor's decision to terminate Nolan's care given Nolan's failed drug test, (R. 327, 329); and Nolan's overlapping prescriptions from different doctors, *see, e.g.*, (R. 326 (receiving a prescription for Percocet on February 1, 2008 from Dr. George Harris), 327 (seeking—unsuccessfully—a Norco prescription from Dr. Harris on February 8, 2008), 386-88 (seeking Lortab from Dr. Williams on January 31, 2008, February 19, 2008, and February 27, 2008), 352-53 (seeking Lortab from Dr. Randy Lambert in 2008 on February 14, 19, and 20)).

As such, for the reasons mentioned above, the court finds that the ALJ's determination that Dr. Williams's functional capacity opinion was entitled to little deference is supported by substantial evidence.

---

[8] In fact, some of Nolan's records also report a "normal" musculoskeletal system. *See* (R. 699, 704, 706, 708, 710).

### b. ALJ's RFC Determination

Nolan also argues that the ALJ committed reversible error in her RFC determination, *see* doc. 10 at 8-12, presumably on the theory that the ALJ's decision was not supported by substantial evidence. The court disagrees.

The ALJ's overall RFC is supported by substantial evidence. As mentioned above, neither the objective testing nor the treatment records reflect more than a mild or—at most—moderate impairment. Moreover, Nolan's activities do not reflect a disabling impairment; although Nolan claimed at his hearing that pain kept him from sleeping during the night, Nolan testified that on a daily basis he reads a couple of hours, talks to his ex-wife, works on the computer, cooks "smaller meals," and tries to take the garbage out and that he can lift up to twenty pounds, attend church three times weekly, and go to his son's basketball games. (R. 436-38). Nolan's treatment records also reflect that, in 2009, he fell down a hill after walking one mile. (R. 666, 674). On at least one occasion, Nolan has denied numbness or tingling in his hands, (R. 416, 685), and in February 2008 and March 2011 he denied taking any pain medication, (R. 333, 650). Additionally, Nolan's treatment records reflect significant gaps in treatment—first, between March 2011 and February 2012 and, second, between August 2012 and September 2013[9]—

---

[9] The court acknowledges that Nolan was imprisoned between November 2012 and July 2013, (R. 431); however, he still did not seek treatment for months before and after that period.

further discrediting his allegations regarding the severity of his impairments. *See* (R. 416). Therefore, the court finds that the ALJ's determination that Nolan was restricted to light work as modified by his RFC is supported by substantial evidence.[10]

Nolan's complaints as to specific impairments—namely, carpal tunnel and obesity—are similarly unavailing. As to the carpal tunnel, the court finds that the RFC appropriately considers Nolan's asserted carpal tunnel impairment. Although he argues that the ALJ did not adjust his RFC to accommodate for his carpal tunnel, Nolan has sought no treatment for—nor has he complained of—carpal tunnel since 2006, *see* (R. 413), nor did he allege it as a basis of disability at his hearing, *see* (R. 427). Additionally, an examination in 2007 revealed that Nolan had 5/5 grip strength, and other examinations of his extremities since 2006 have

---

[10] Nolan also asserts error in the ALJ's articulation of the RFC determination. Specifically, Nolan baldly asserts that the ALJ's recommendation that Nolan not be subject to "excessive vibration," *see* (R. 412), constitutes reversible error because the term "excessive" is "not expressed in vocational terms" and therefore "open to subjective interpretation," *see* doc. 10 at 8. This argument, without more, cannot succeed. *See N.L.R.B. v. McClain of Ga.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting argument and citations to authorities, are generally deemed to be waived.").

Nolan also argues that the ALJ erred by failing to make a "function by function analysis" in the RFC regarding the full extent of his restrictions, by, for example, failing to address "balancing, stooping, crouching, kneeling, or crawling," among other potential functional limitations. *See* doc. 10 at 8-9. However, this argument fails because the ALJ is not obligated to itemize limitations already implicit in her reference to the statutory definition of "light work." *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (per curiam) (noting that an ALJ is not required to make a specific finding as to every function within an RFC designation when the ALJ's RFC functional analysis is supported by substantial evidence); *see also* 20 CFR § 416.967(b) (defining "light work").

revealed no abnormalities (296, 597, 667, 699, 704, 706, 708, 710). *See Fage v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998) (noting that the absence of medical opinions with recommendations contrary to the ALJ's RFC determination supported the ALJ's decision). Even in Dr. Williams's functional capacity opinion, he noted that Nolan's finger dexterity was normal. *See* (R. 357). The ALJ's determination that Nolan's carpal tunnel did not constitute a severe impairment bearing on his RFC is therefore supported by substantial evidence.

The RFC also appropriately accommodates Nolan's obesity. After examining the impact of Nolan's obesity on his ability to perform work-related activities—in compliance with both the district court's and the Appeals Council's directions—the ALJ found that Nolan's obesity did not reduce his functional capacity. *See* (R. 417, 447-48, 450-51). Indeed, the ALJ noted Nolan's body mass index of 30.9, acknowledged that his weight could have an adverse effect on existing impairments, and noted that she had considered obesity in determining Nolan's RFC. (R. 417). That Nolan in his brief merely objects to—but does not point to specific shortcomings in—the RFC is fatal to his argument here. *See McIntire v. Colvin*, No. 2:12cv820-WC, 2013 WL 6596955, at *6 (M.D. Ala. Dec. 16, 2013) (noting that the claimant had "failed to explain how her obesity caused further limitations than those found by the ALJ and . . . did not identify any reliable medical opinions supporting limitations beyond those stated in her RFC resulting

from her obesity"). Moreover, Nolan did not allege his obesity as a basis of disability at his hearing. *See James v. Barnhart*, 177 F. App'x 875, 878 n.2 (11th Cir. 2006) (per curiam) (noting that the ALJ did not err by failing to find obesity as a severe impairment when the claimant at her hearing did not claim obesity as a functional impairment). Additionally, as the ALJ noted and as discussed above, the record does not reflect work-related limitations as a result of Nolan's obesity, nor does it reflect a limitation in his range of motion, (R. 296, 417, 617, 651, 667, 682), and does not attribute any cardiovascular or pulmonary complications to Nolan's obesity. *See* (R. 417); doc. 10 at 9-10. Indeed, imaging from 2008 revealed no acute cardiopulmonary abnormalities, *see* (R. 337), and when Nolan presented to the emergency room in 2009 with complaints of acute chest pain, he had also been consuming cocaine, methamphetamines, and Lortab for the three days prior, *see* (R. 681). Therefore, substantial evidence supports the ALJ's RFC accommodation as to Nolan's obesity.[11]

---

[11] Nolan also argues that the ALJ erred because the hypothetical she presented to the VE only incorporated limitations included in the ALJ's final RFC—as opposed to including all of the limitations he *asserts* should have been included. *See* doc. 10 at 9. It is well established in this circuit that "unless there was [VE] testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence." *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980). However, contrary to Nolan's contentions, the ALJ appropriately complied with this rule, as the limitations she imposed upon her hypothetical to the VE incorporated those she eventually found in her RFC. *See* (R. 412, 442). Because that RFC is supported by substantial evidence, the ALJ did not err here.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Nolan is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 29th day of April, 2016.

*/s/ Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE